218 So.2d 150

**M. A. BARNES, Sr., et al.**

v.

**DALE COUNTY BOARD OF EQUALIZA-
TION et al.**

**4 Div. 299.**

Supreme Court of Alabama.

Oct. 17, 1968.

Rehearing Denied Feb. 6, 1969.

J. Paul Lowery, Montgomery, for appellants.

MacDonald Gallion, Atty. Gen., Willard
W. Livingston and Herbert I. Burson, Jr.,
Asst. Attys. Gen., for appellees.

SIMPSON, Justice.

This case was originally assigned to the
late, lamented Mr. Justice Goodwyn and
recently reassigned to the writer for study
and preparation of the opinion.

This cause was commenced in the Circuit Court of Dale County, Alabama, by a
Bill of Complaint in Equity, which was
brought as a class action for 667 aggrieved
taxpayers in that county protesting, essentially, that the Board of Equalization of
Dale County had conducted itself in an
unlawful and illegal manner in arriving at
certain ad valorem tax assessments in
that county. Complainants were taxpayers
affected by the action and they asked for
a declaratory Judgment or in the alternative injunctive relief. The Bill of Complaint in setting out matters seeking a declaratory judgment alleged that the Dale
County Board of Equalization reassessed
complainants' real property at 25% of fair
market value for ad valorem tax purposes.
It further averred that although the results
obtained by the Board of Equalization
were lawful per se, that the method employed by the Board was a systematic and
intentional discrimination against complainants, all of which violated the Alabama Constitution and also violated rights
afforded them in the 14th Amendment of
the United States Constitution. Complainants asked for a declaratory judgment declaring such conduct of the Dale County
Board of Equalization to be discriminatory,
illegal and unlawful and in violation of
their constitutional rights.

The Bill of Complaint also asked for an
injunction which would prohibit the Board
of Equalization, the Tax Assessor and Tax
Collector from further conduct of the manner then employed by the Board, and that
the Tax Assessor be enjoined from use of
the valuations of complainants' properties
and members of their class and further that

the Tax Collector be enjoined from collecting taxes thereon.

The defendant thereupon filed a motion to dismiss the Bill of Complaint on the basis that:

1. Plaintiffs failed to take an appeal within 30 days as allowed by law.

2. Plaintiffs were unlawfully using a bill for declaratory judgment and a bill for injunction as a substitute for an appeal.

3. The Bill of Complaint amounts to a suit against the state which is prohibited by law.

The answer filed by defendants denied the relief sought in both aspects of the Bill of Complaint as last amended. Defendants claimed in their answer by attached exhibits that it would affirmatively appear that the Board of Equalization had in fact developed a program, plan or design which would systematically and lawfully revaluate the entire county for ad valorem tax purposes.

After hearing the testimony and evidence in the case, the court entered a decree on February 15, 1967, denying the relief sought by plaintiffs in this:

"The Court feels constrained to remark, that possible hardships have been worked on many of the complaining parties herein. That their ad valorem taxes have been reassessed and raised twice within the last 4 years. However, this Court is not prepared to conclude that the Board of Equalization of Dale County, acted in an unlawful and illegal manner in so reassessing.

"While the plan now being followed by the said Board of Equalization, might not be the most ingenious, nor desirable plan for a systematic reassessment of all properties within this county, such determination lies within the discretion of this board, and this Court is of the opinion that the board is proceeding in a legal and systematic fashion."

It is from this final decree denying plaintiffs' relief that they prosecute this appeal.

As Justice Stakely did in Hamilton v. Adkins, 250 Ala. 557, 35 So.2d 183, which case we believe dispositive of this one, we prefer to write to the merits of this case, making unnecessary any comment with regard to the appellees' contentions that procedure adopted by the complainants below was inappropriate.

The essential issue in this case is whether or not it has been shown by appellants that the officials chargeable with the administration of the ad valorem tax statute in Dale County administered that statute with a deliberate purpose or design to discriminate by a systematic method against the class of property-owners-taxpayers represented by these appellants. Stated differently, the question is whether the Dale County Board of Equalization discriminated against the appellants by arbitrarily raising their property assessments while other property assessments in Dale County were not raised.

The record indicates that the Board of Equalization of Dale County adopted a resolution in February, 1966, to begin immediately on a program of equalizing property assessments in Dale County for ad valorem tax purposes, the goal being to assess all property eventually at 25% of its fair market value. The members of the Board of Equalization agreed that residential properties would be reassessed first. Following this meeting held on February 14, 1966, the Board met again on March 31, 1966, the minutes of which meeting reflect the following:

"The Dale County Board of Equalization, having met this day, have elected to set forth to the February 14, 1966, minutes the following:

"Having worked on reviewing and equalizing residential properties for the past several weeks, we have agreed to continue with this class of property dur-

ing the remainder of 1966 as time will allow.

"Beginning with the 1967 year the Board will continue with residential properties in the same manner of equalization as in 1966 until completed and then take up review of commercial and industrial properties along with farm lands."

Each of the complaining taxpayers in this case owns residential property in Dale County, most of which is subdivision property. It is apparent from the record, as contended by these complaining taxpayers, that the Board of Equalization started implementing its plan for reassessing all property in Dale County, by beginning with residential properties. The assessments of some 670 residential property owners have been raised under this plan, some more than once, though no complaint is made that the assessments exceed 25% of the fair market value. The gravamen of the complaint is that while the property of this class of property owners has been reassessed, other properties in Dale County, particularly rural property, have not been reassessed.

■ The question, however, as noted in Hamilton v. Adkins, supra, is whether the plan adopted by the Board of Equalization is designed to discriminate by a systematic method against a particular class of property, in this case, residential property. This record does indicate that as yet little, if any, rural property has been reassessed under this plan. However, we cannot conclude from that fact that the Board has no intention to reassess the entire property of Dale County, including rural properties.

This court is sympathetic with the feelings expressed by many of these complaining taxpayers who testified below that they were paying taxes based upon a 25% assessment while other property owners in the county were paying taxes based upon a far lesser rate, in some cases as little as 5% or less. However, as indicated, we cannot conclude at this point that the plan to reassess all property in Dale County will not be implemented by the Board of Equalization. We are mindful of the fact that the members of the Board of Equalization are limited in number, and limited in time in which to reassess all property in the county, in order to achieve equalization of property assessments throughout the county. As was pointed out in Hamilton v. Adkins, supra, which reviewed the controlling authorities on this subject:

"* * * where there is a review of only a portion of the real estate in the county done in good faith, and looking to a plan to equalize values of all property as promptly as possible, this should be considered on the question of intentional discrimination. * * *

"In short taxing authorities must commence somewhere in the county with some class of taxpayer in order to equalize the entire county."

Here the record indicates that the Board of Equalization has adopted a plan to equalize the values of all property in Dale County. It has elected to start with residential property. The complainants in this case are, therefore, the first to be affected by the plan to equalize the property assessments in Dale County. But of course it is apparent that the Board cannot instantaneously reassess all property at the same moment. As the trial court noted in the decree rendered in this cause:

"While the plan now being followed by the said Board of Equalization, might not be the most ingenious, nor desirable plan for systematic reassessment of all properties within this county, such determination lies within the discretion of this board, and this Court is of the opinion that the board is proceeding in a legal and systematic fashion."

■ We must agree with the trial court that on the state of the record before us, we cannot conclude that the Board of Equalization is not acting in good faith, and that the record does not support the charge that it is deliberately discriminating

**440**

against residential property owners in having reassessed their property first. Of course, if it does not as promptly as possible, reassess other property in the county, then in that event a case for intentional discrimination might be made.

The decree appealed from is affirmed.

Affirmed.

LIVINGSTON, C. J., and KOHN, J., concur.

COLEMAN, Justice (concurring in result):

I concur in affirmance on the ground that the bill does not present a proper case for declaratory judgment because complainants, in this case, seek to substitute a suit for declaratory judgment for an appeal, as allowed by law, from the assessments made against their property.